**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SOUTHERN ORTHOPAEDIC SPECIALISTS LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-0861-WBV-DMD** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **SECTION: D (1)** |

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant State Farm Fire and Casualty Company's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.[1] Plaintiff Southern Orthopaedic Specialists LLC opposes the Motion.[2] Defendant has filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED without prejudice.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This is an insurance coverage and bad faith suit to recover lost income and extra expenses incurred during the COVID-19 pandemic.[4] On August 1, 2019, Plaintiff Southern Orthopaedic Specialists LLC ("Southern Orthopaedic"), a medical practice operating at three locations, entered into a contract for insurance with Defendant State Farm Fire and Casualty Company ("State Farm").[5] The insurance policy ("the policy") included an eight page policy, a Business Owners Coverage Form,

---

[1] R. Doc. 15.
[2] R. Doc. 25.
[3] R. Doc. 29.
[4] R. Doc. 1-1.
[5] R. Doc 1-1 at ¶6.

and several policy endorsements, including "CMP 4218.2, Amendatory Endorsement (Louisiana)," "CMP 4705.2, Loss of Income and Extra Expense, and "CMP 4704.1, Dependent Property—Loss of Income."[6] Coverage under the CMP 4705.2, Loss of Income and Extra Expense endorsement required that any loss be caused by "direct physical loss to" the covered property and the loss is caused by a "Covered Cause of Loss."[7] The same endorsement also provided coverage for losses caused by a civil authority prohibiting access to the covered property due to a "Covered Cause of Loss" to a non-covered property under certain circumstances.[8]

Plaintiff made a timely demand on State Farm for business interruption coverage "caused by or resulting from the COVID-19 Pandemic; the suspension of surgeries and in-person medical visits; and/or the orders of the State of Louisiana, the Department of Health, the City of New Orleans, and or Jefferson Parish."[9] Plaintiff sought coverage for the business interruption loss under the "CMP 4705.2, Loss of Income and Extra Expense" endorsement which included Civil Authority coverage.[10] Defendant denied coverage on June 24, 2020.[11]

Plaintiff then brought suit in Orleans Parish Civil District Court seeking declaratory relief that coverage was provided for the claimed loss, payment for the claimed relief, and bad faith damages as provided by La. Rev. Stat. Ann. § 22:1892.[12]

---

[6] R. Doc. 1-4.
[7] *Id.* at 29.
[8] *Id.* at 30.
[9] R. Doc. 1-1 ¶ 39.
[10] *Id.* at ¶¶ 10-15.
[11] R. Doc. 1-1 ¶ 39, 45.
[12] *Id.* at ¶¶ 47-52

Defendant timely removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.[13]

Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) alleging that Plaintiff's claims fail because: (1) the policy contains exclusions that preclude coverage; and (2) Plaintiff otherwise fails to plead sufficient facts to establish accidental direct physical loss to trigger coverage.[14] Specifically, Defendant claims the presence of an exclusion clause removing coverage for loss caused by virus (the "Virus Exclusion Clause") bars Plaintiff's claims. Defendant also argues that any losses due to either government orders or the presence of a virus, fails to constitute "direct physical loss" under Louisiana law.

In response, Plaintiff concedes that coverage under the policy is triggered if there is "accidental direct physical loss" to covered property, but argues that "accidental direct physical loss" is not defined in the policy. Nevertheless, Plaintiff maintains that it has sufficiently pled loss of physical use of the insured property and uninhabitability.[15] Further, Plaintiff argues that the policy's virus exclusion does not bar coverage and, instead, the policy provides coverage though the Civil Authority coverage endorsement.[16]

---

[13] R. Doc. 1 at 1.
[14] R. Doc. 15.
[15] R. Doc. 25.
[16] *Id.*

In its Reply, Defendant reasserts that the exclusions listed in the insurance policy unambiguously apply to the endorsement and that Louisiana law does not recognize intangible loss as a "direct physical loss" to a property.[17]

## II.   LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[18] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[21]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[22] The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[23]

---

[17] R. Doc. 29.

[18] Fed. R. Civ. P. 12(b)(6).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[20] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).

[21] *Iqbal*, 556 U.S. at 679 (quotation omitted).

[22] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[23] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

"Dismissal is appropriate when the complaint on its face shows a bar to relief."[24] In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[25] The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[26]

## III.   ANALYSIS

### A. Matters Considered by the Court in its Analysis and Applicable Law.

As an initial matter, while the Court is generally prohibited from considering matters outside the pleadings in a 12(b)(6) analysis, the Court considers the insurance policy at issue, including endorsements and attachments, as they were attached to Southern Orthopaedic's State Court Petition, are referenced in the Petition, and are central to Plaintiff's claims.

Both parties contend that Louisiana law applies to this matter. The Court agrees. As this case is before the Court under its diversity jurisdiction, Louisiana substantive law applies. Under Louisiana law, insurance policies are contracts to be constructed "using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[27] The Louisiana Civil Code directs the judiciary to ascertain

---

[24] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[25] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[26] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004).

[27] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La.2003)).

the "common interest of the parties" and to "constru[ct] words and phrases using their plain, ordinary and generally prevailing meaning."[28] If the insurer and insured attach an endorsement to the policy, "the endorsement becomes part of the contract, and the two must be construed together."[29] However, if a provision of the endorsement conflicts with a provision in the policy, the endorsement supersedes the policy.[30]

## B. The Virus Exclusion Clause is unambiguous and applies to the endorsement to bar coverage of Plaintiff's loss.

### 1. *Plaintiff's "Loss of Income and Extra Expense" claims are barred by the Virus Exclusion Clause.*

In its Motion, State Farm contends that the Virus Exclusion Clause bars coverage for Plaintiff's losses. Quoting the policy's language, State Farm asserts that the plain language bars coverage for "any loss which would not have occurred in the absence of . . . virus."[31] Relying on Louisiana authority, State Farm avers that an insurer "has the right to limit its contracted liability. When this limitation is expressed unambiguously in its coverage exclusions, courts will enforce the provisions as written."[32] In response, Plaintiff alleges that a conflict exists between the endorsement and the policy as both the policy and the endorsement contain exclusions, but the endorsement fails to include a virus exclusion.[33] Since the

---

[28] *Wisznia Co., Inc. v. Gen. Star Indem. Co.*, 759 F.3d 446 (5th Cir. 2014) (internal quotations removed) (citing Louisiana Civil Code arts. 2045, 2047).

[29] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597 (5th Cir. 2018) (quoting *Zeitoun v. Orleans Par. Sch. Bd.*, 2009-1130 (La.App. 4 Cir. 3/3/10); 33 So.3d 361, *writ denied,* 2010-0752 (La. 6/4/10); 38 So.3d 303); *see also Mattingly v. Sportsline, Inc.*, 98-230 (La.App. 5 Cir. 10/28/98); 720 So.2d 1227, *writ denied,* 98-2938 (La. 1/29/99); 736 So.2d 830.

[30] *Id.*

[31] R. Doc. 15.

[32] R. Doc. 15, quoting *Bossier Plaza Assocs. V. Nat'l Union Fire Ins. Co.,* 813 So. 2d 1114, 1119 (La. Ct. App. 2d Cir. 2002).

[33] R. Doc. 25 at 11.

endorsement fails to include a virus exclusion, Plaintiff contends that it is in conflict with the exclusions set out in the policy. Relying on Louisiana law, Plaintiff asserts that "if a conflict exists between an endorsement and the general insurance contract, the endorsement prevails,"[34] and thus the endorsement should supersede the exclusion terms present in the policy, rendering the Virus Exclusion Clause in the policy moot. Alternatively, Plaintiff asserts that, if the Virus Exclusion Clause applies, it is inapplicable as the plain language of the clause reveals that no coverage exists for loss or damage caused by "fungi, wet rot, dry rot, bacteria, or virus."[35] Plaintiff asserts that "if State Farm actually intended to exclude coverage for pandemic diseases, it could have included clear, explicit language in the Policy, but it chose not to."[36]

In its reply, Defendant reiterates that Plaintiff's claims are barred by the clear language of the Virus Exclusion Clause contained in the policy.[37] Further, Defendant denies there is any conflict between the endorsement and the Virus Exclusion Clause in the policy.

The Court agrees with Defendant that no conflict exists between the endorsement exclusions and the Virus Exclusion Clause included in the policy. Indeed, instead of raising a conflict, the endorsement appears to contemplate and incorporate the exclusions included in the policy. The endorsement for "Loss of Income and Extra Expense," under which Plaintiff sues, states, "[t]he coverage

---

[34] R. Doc. 25, citing *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597 (5th Cir. 2018).
[35] R. Doc. 25 at 12.
[36] *Id.*
[37] R. Doc. 15.

provided by this endorsement is subject to the provisions of SECTION I—PROPERTY, except as provided below."[38] "Section I—Property" provides that the insurer will cover loss at the premises caused by any loss described under "SECTION I—COVERED CAUSES OF LOSS."[39] The "Covered Causes of Loss" subsection further provides the covered property is insured for "accidental direct physical loss" unless the loss is excluded in "SECTION I—EXCLUSIONS."[40] The "Exclusions" subheading list several acts and events that are excluded from coverage, including an exclusion for "virus"—the Virus Exclusion Clause.[41]

Courts have consistently enforced identically worded Virus Exclusion Clauses in State Farm insurance contracts.[42] Accordingly, because the endorsement incorporates the exclusions listed in the policy and does not override or preclude them, the Court finds there is no conflict between the endorsement and the policy.

Having found that the Virus Exclusion Clause applies to claims under the "Loss of Income and Extra Expense" protections, the Court next determines if the Virus Exclusion Clause precludes coverage in the present case. The "Section I—

---

[38] R. Doc. 29 at 3; R. Doc. 15-3 at 29.

[39] R. Doc. 15-3 at 57.

[40] *Id*. at 59.

[41] *Id*. at 60.

[42] *See Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*, No. 20-2295, 2021 WL 1614812 (E.D. La. Apr. 26, 2021) (enforcing the Virus Exclusion Clause in an identical State Farm insurance contract); *see also Boulet Rehab. Servs. Inc. v. State Farm Fire & Cas. Co.,* No. 6:21-00642, 2021 WL 4923649 (W.D. La. Oct. 20, 2021), *report and recommendation adopted,* No. 6:21-00642, 2021 WL 5234772 (W.D. La. Nov. 9, 2021) (finding that the Virus Exclusion Clause in a State Farm insurance contract barred plaintiff's COVID-19 coverage claims); *see also Travel Mach. La. LLC v. State Farm Fire & Cas. Co.,* No. 6:21-0635, 2021 WL 4844401 (W.D. La. Oct. 14, 2021)*, report and recommendation adopted sub nom. Travel Mach. Louisiana, LLC v. State Farm Fire & Cas. Co.,* No. 21-0635, 2021 WL 5040355 (W.D. La. Oct. 29, 2021) (determining that the plain language of the State Farm insurance contract's Virus Exclusion clause precludes Plaintiff's claim for coverage arising from COVID-19 related losses.

Exclusions" provision contains a lead-in clause that excludes coverage if the loss is "the cause of the excluded event" or if "other causes acted concurrently or in any sequence with the excluded event to produce the loss."[43] Present in the listed excluded events is "Fungi, Virus Or Bacteria."[44] The Virus Exclusion Clause is further defined as "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease."[45]

Courts throughout the Fifth Circuit have found that both identical and similar virus exclusion clauses bar recovery for COVID-19 related insurance claims. In *Muriel's New Orleans, LLC v. State Farm Fire and Casualty Company*, this court evaluated an identical State Farm insurance contract and Virus Exclusion Clause.[46] There, the court determined that the plain language of the Virus Exclusion Clause precluded Muriel's claim for coverage when, as here, the loss "occurs as a result" of a "virus, bacteria, or other microorganism[.]"[47] The court explained that the "Centers for Disease Control and Prevention ("CDC") defines COVID-19 as "a new virus ... 'CO' stands for corona, 'VI' for virus, and 'D' for disease. Therefore, COVID-19 falls squarely within the language of the Virus Exclusion."[48]

Following the decision in *Muriel's*, the court in *Boulet Rehabilitation Services Inc. v. State Farm Fire & Casualty Company* addressed the identical argument

---

[43] R. Doc. 15-3 at 59.
[44] *Id.*
[45] *Id.* at 60.
[46] No. 20-2295, 2021 WL 1614812 (E.D. La. Apr. 26, 2021).
[47] *Id.* at *569-70.
[48] *Id.* at *570.

regarding the Virus Exclusion Clause.[49] The court determined that the plain language of the Virus Exclusion Clause operates to exclude coverage when, as here, the loss "occurs as a result" of a "virus, bacteria, or other microorganism[.]"[50]

Similarly, in *Travel Machine LA. LLC. v. State Farm Fire & Casualty Company*, the court analyzed an identical State Farm Virus Exclusion Clause and held that the plain language of the Virus Exclusion Clause precluded plaintiff's claim for coverage regarding COVID-19 related losses because "the Virus Exclusion unambiguously excludes loss caused by virus."[51] Finally, in *Q Clothier New Orleans LLC v. Twin City Fire Insurance Company*, the court granted judgment on the pleadings in favor of the defendant insurer on nearly identical claims.[52] In that case, the plaintiff alleged that it sustained business losses as a result of Louisiana government orders restricting the operations of non-essential businesses that were issued to minimize the spread of COVID-19.[53] The court held that the policy's virus exclusion barred the plaintiff's claims, as a matter of law, because the COVID-19 virus was in the chain of causation since the government orders, as here, were issued to reduce the spread of the virus.[54] This Court finds similarly. A plain reading of the Virus Exclusion Clause reveals that it bars coverage for "any loss which would not

---

[49] No. 6:21-00642, 2021 WL 4923649 (W.D. La. Oct. 20, 2021), *report and recommendation adopted,* No. 6:21-00642, 2021 WL 5234772 (W.D. La. Nov. 9, 2021) (finding that the Virus Exclusion Clause in a State Farm insurance contract barred plaintiff's COVID-19 coverage claims).
[50] *Id.*
[51] *Travel Mach. La. LLC v. State Farm Fire & Cas. Co.,* No. 6:21-0635, 2021 WL 4844401 (W.D. La. Oct. 14, 2021), *report and recommendation adopted sub nom. Travel Mach. Louisiana, LLC v. State Farm Fire & Cas. Co.,* CV 21-0635, 2021 WL 5040355 (W.D. La. Oct. 29, 2021).
[52] No. 20-1470, 2021 WL 1600247 (E.D. La. Apr. 23, 2021).
[53] *Id.* at 7-9.
[54] *Id.*

have occurred in the absence of . . . virus."[55]  Plaintiff's argument that the exclusions did not specifically cover a worldwide pandemic disease ignores the fact that the worldwide pandemic disease is because of the COVID-19 virus. As such, a plain reading of the Virus Exclusion Clause connects the COVID-19 virus to the word "virus" in the clause. Thus, after its own analysis of the plain language of the clause, and in keeping with these decisions regarding identical or similar Virus Exclusion Clauses in State Farm insurance contracts, the Court finds that the Virus Exclusion Clause applies in the present case to bar Plaintiff's claim for coverage.

### 2. Plaintiff's "Civil Authority" claim is also barred by the Policy and its Virus Exclusion Clause.

Plaintiff also alleges coverage under the policy's "Civil Authority" section of CMP 4705.2, Loss of Income and Extra Expense endorsement.[56] As with the "Loss of Income and Extra Expense" coverage, the "Civil Authority" coverage also requires a "Covered Cause of Loss."[57] Under Louisiana law, to prove coverage under the Civil Authority provision, the insured must establish a loss of business income:

> (1) caused by an action of civil authority;
> (2) the action of civil authority must prohibit access to the described premises of the insured;
> (3) the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and
> (4) the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.[58]

---

[55] R. Doc. 15.
[56] R. Doc. 1-1 ¶ 14; R. Doc. 25 at 12.
[57] R. Doc. 15-3 at 30.
[58] *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) (citing *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co.*, 2007 WL 2489711, at *3 (M.D. La. Aug. 29, 2007)).

Importantly, coverage under the Civil Authority provision is circumscribed by the terms of the endorsement, which provides: "The coverage provided by this endorsement is subject to the provisions of Section I—Property, except as provided below."[59] As described above, Section I—Property provides coverage for any loss caused by a "Covered Cause of Loss," which is subsequently amended by the Virus Exclusion Clause that excludes coverage if the loss is "the cause of the excluded event" or if "other causes acted concurrently or in any sequence with the excluded event to produce the loss."[60] Present in the listed excluded events is "Fungi, Virus Or Bacteria."[61] The Virus Exclusion Clause is further defined as "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease."[62]

Courts have held that claims for coverage arising from government stay home orders are directly linked to COVID-19 and thus barred under the provisions of Covered Cause of Loss, which includes the Virus Exclusion Clause. In *Boulet Rehabilitation Services,* the court held,

> Such executive orders were necessitated by the COVID-19 pandemic and would not have been enacted absent the viral outbreak. Thus, under the plain language employed in the Anti-Concurrent Causes Clause ("ACC Clause"), losses attributable to the Governor's executive stay-home orders are excluded based on their causal relation to the COVID-19 virus.[63]

The Court agrees with that reasoning.

---

[59] R. Doc. 15-3 at 29.

[60] *Id.* at 59.

[61] *Id.*

[62] *Id.* at 60.

[63] No. 6:21-00642, 2021 WL 4923649 at *4 (W.D. La. Oct. 20, 2021), *report and recommendation adopted,* No. 6:21-00642, 2021 WL 5234772 (W.D. La. Nov. 9, 2021).

Moreover, the Civil Authority provision requires "the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy."[64] Here, Plaintiff asserts that COVID-19 "was physically present in the Covered Locations and properties within one mile."[65] However, the Virus Exclusion Clause applies to the "Covered Cause of Loss" and bars any COVID-19 related cause of loss at both covered locations and properties within one mile. Therefore, as detailed above, the Virus Exclusion Clause applies to the endorsement to preclude losses caused by COVID-19.

## C. Even if the Virus Exclusion did not bar coverage, Plaintiff fails to show "direct physical loss to property" to trigger coverage.

Even if the Virus Exclusion Clause did not bar coverage, Plaintiff has failed to show that the loss was caused by a "direct physical loss" to the covered property as required by the "Loss of Income and Extra Expense" endorsement.[66] Plaintiff's allegations that government stay home orders or that the actual presence of COVID-19 caused "direct physical loss" to a property fails as a matter of law because it has failed to assert a connection to any tangible alteration or change to the property.

Under Louisiana law, the judiciary's role in interpretation of contracts is "to ascertain the common intent of the parties to the contract" by construing words and phrases "using their plain, ordinary and generally prevailing meaning."[67] If

---

[64] R. Doc. 15-3 at 30.
[65] R. Doc. 1-1 ¶ 43.
[66] R. Doc. 15-3 at 29.
[67] *Wisznia Co., Inc. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448–49 (5th Cir. 2014) (internal quotations removed); *see also Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801 (La. 2/25/04); 869 So.2d 96; *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03); 848 So.2d 577; La. Civ.Code Ann. arts. 2045, 2047.

ambiguity as to a term's meaning exists, then the term should be interpreted against the insurer.[68]

Plaintiff does not claim that COVID-19 or the stay home orders caused tangible alterations to the covered property, but instead asserts that "direct physical loss" occurred "due to the uninhabitability of the insured property."[69] Plaintiff relies primarily upon *In re Chinese Manufactured Drywall Products Liability Litigation* as holding that "physical loss" can occur if a home is rendered "useless and/or uninhabitable."[70] Plaintiff also relies upon *Ross v. C. Adams Construction & Design, L.L.C.* as supporting the position that if a home is rendered uninhabitable, "physical loss" has occurred.[71]

Plaintiff's reliance upon *Chinese Drywall* and *Ross* is misplaced for two reasons. First, in both *Chinese Drywall* and *Ross,* the presence of Chinese drywall caused corrosion which resulted in tangible alterations to the property.[72] The court in *Ross* was concerned with the "inherent qualities" of the drywall that emitted corrosive sulfur gas into the home.[73] Similarly, in *Chinese Drywall* the court found "the Chinese-manufactured drywall has caused a 'distinct, demonstrable, physical alteration' of the Plaintiffs' homes . . . by corroding the silver and copper elements in the homes."[74] Second, both *Chinese Drywall* and *Ross* were focused not on commercial

---

[68] *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 231 (5th Cir. 2007) (any ambiguity should be construed against the insurer) *See also* Louisiana Civil Code art. 2056.

[69] R. Doc. 25 at 8.

[70] R. Doc. 25 at 9; *In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F.Supp.2d 822 (E.D. La. 2010).

[71] No. 10-852 (La.App. 5 Cir. 6/14/11); 70 So.3d 949.

[72] *Ross,* 70 So.3d at 952; *Chinese Manufactured Drywall,* 759 F. Supp. 2d at 831.

[73] *Ross,* 70 So.3d at 952.

[74] *Chinese Manufactured Drywall,* 759 F. Supp. 2d at 831.

insurance coverage, as is the case here, but upon homeowners' insurance.[75] The court in *Chinese Drywall* specifically reasoned how the "nature and purpose" of a homeowners' policy distinguished it from a commercial policy.[76] Just as that court distinguished a builders' risk policy issued for a vessel, this Court distinguishes a homeowner's policy from this business owner's policy.

Other courts have refused to extend the reasoning applied in *Chinese Drywall* and *Ross* to similar fact scenarios. In *Lafayette Bone & Joint Clinic, Inc v. Transportation Insurance Co.*, the court rejected the argument that the presence of the virus was akin to the exposure to Chinese-manufacturing drywall found in *Chinese Drywall* because the plaintiff failed to demonstrate that "coronavirus, to the extent present in its building, rendered the premises uninhabitable."[77]

In the instant matter, "direct physical loss" is undefined by either the policy or endorsement. However, the Fifth Circuit has previously interpreted "direct physical loss" in relation to insurance contracts and held that inclusion of "physical" in the phrase excludes losses that are "intangible or incorporeal."[78] Similarly, Louisiana courts have held that "direct physical loss" requires actual physical damage to

---

[75] *Ross*, 70 So.3d 949*; Chinese Manufactured Drywall*, 759 F. Supp. 2d 822.

[76] *Chinese Manufactured Drywall*, 759 F. Supp. 2d at 833.

[77] No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021).

[78] *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 Fed.Appx. 465 (5th Cir. 2006) (applying Mississippi law) (citing to 10A COUCH ON INS. § 148:46 (3d ed.2005)); s*ee also Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267 (5th Cir. 1990) (applying Louisiana law) (finding "the language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state— for example, the car was undamaged before the collision dented the bumper").

property and that lost revenue incurred from non-essential business closures in the wake of COVID-19 does not amount to direct physical loss or damages.[79]

More recently, in a similar commercial property policy claim arising from the COVID-19 pandemic, the Fifth Circuit clarified that a "direct physical loss of property" means a tangible alteration to the property or physical deprivation of property, specifically finding that a restaurant's loss of use of its dining rooms for their intended purpose did not amount to a physical loss or physical deprivation of property.[80] In *Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Company,* plaintiff restaurant owners sought coverage after a Texas statewide mandate shuttered their in-dining restaurants.[81] The insurer in that case denied coverage as the suspension of operations "must be caused by direct physical loss of or damage to property at the premises."[82] The Fifth Circuit held that that the presence of the virus does not "constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed

---

[79] *See Nite, Nite LLC v. Certain Underwriters at Lloyd's London*, No. 698068 (La. Dist. Ct. Feb. 9, 2021) (unpublished decision) (granting summary judgment when the damage consisted only of the possible presence of the virus on the premises because "there's no property loss or no damage that occurred, only the shutdown order, and only economic impact without any damage of physical loss to property."); *Cajun Conti LLC, et al. v. Certain Underwriters at Lloyd's London*, No. 2020-02558 (La. Dist. Ct. Judgment of Feb. 10, 2021) (judgment rendered in favor of insurer where plaintiff sought coverage for COVID-19 business interruption losses).

[80] *Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Co.*, 514 F. Supp. 3d. 896 (W.D. Tex. 2021), aff'd. *Terry Black's Barbecue LLC*, No. 21-50078, 2022 WL 43170 (5th Cir. 2022); *see also Aggie Investments LLC*, No. 21-40382, 2022 WL 67333 (E.D. Tex. Apr. 20, 2021) (finding that "direct physical loss" under the policy required a tangible alteration to property, which preventative government orders did not do).

[81] 514 F. Supp. 3d. 896 (W.D. Tex. 2021), aff'd. *Terry Black's Barbecue LLC*, No. 21-50078, 2022 WL 43170.

[82] *Id.*

from surfaces with routine cleaning and disinfectant."[83] In interpreting "physical loss of property" to require a tangible alteration or deprivation of property, the Fifth Circuit joined with the Second, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.[84] This definition has been applied by numerous courts within the Fifth Circuit evaluating similar claims. Notably, these cases universally found that COVID-19 or stay home orders did not constitute "direct physical loss."[85]

---

[83] *Id.*

[84] *Id. See Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021) ("Whether one sticks with the terms themselves (a 'direct physical loss of' property) or a thesaurus-rich paraphrase of them (an 'immediate' 'tangible' 'deprivation' of property), the conclusion is the same."); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) ("[T]here must be some physicality to the loss or damage of property—e.g., a physical alteration, physical contamination, or physical destruction."); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) (concluding "California courts would construe the phrase 'physical loss of or damage to' as requiring an insured to allege physical alteration of its property"); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, -- F.4th --, No. 21-1186, 2021 WL 5833525, at *4 (7th Cir. Dec. 9, 2021) ("'[D]irect physical loss' requires a physical alteration to property."); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, -- F.4th --, No. 21- 6045, 2021 WL 6048858, at *3 (10th Cir. Dec. 21, 2021) ("[A] 'direct physical loss' requires an immediate and perceptible destruction or deprivation of property."); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, -- F.4th --, 2021 WL 61009961, at *4 (2d Cir. Dec. 27, 2021) (concluding "direct physical loss" does not extend to loss of use but requires physical damage). *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021).

[85] *Muriel's*, No. 20-2295, 2021 WL 1614812 (E.D. La. Apr. 26, 2021); *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F.Supp.3d 574 (E.D. La. 2021) (finding that lost profits incurred by men's clothing store owners by government-mandated business closures during COVID-19 pandemic did not amount to "direct physical loss or damages" because there was no physical alteration of the property); *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, No. 21-648, 2021 WL 2476867 (E.D. La. June 17, 2021) (following *Q Clothier* in requiring distinct, demonstrable, physical alterations); *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, No. 21-858, 2021 WL 5415846 (E.D. La. Nov. 19, 2021) (holding that "direct physical loss or damage" requires a "distinct, demonstrable, physical alteration of the property" or "actual physical change or injury to the property" which Plaintiff failed to allege because "COVID damages people, not property"); *Coleman E. Adler & Sons, LLC v. Axis Surplus Insurance Co.*, No. 21-00648, 2021 WL 2476867 (E.D. La. June 17, 2021) (finding that "closures mandated by civil authorities due to the COVID-19 pandemic did not cause direct physical loss or damage because their injury is purely economic in nature"); *Padgett v. Transp. Ins. Co.*, No. 21-01086, 2021 WL 2559597 (W.D. La. June 1, 2021), *report and recommendation adopted,* 6:21-CV-01086, 2021 WL 2555377 (W.D. La. June 22, 2021); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*, No. 21-00317, 2021 WL 1740466 (W.D. La. May 3, 2021); *Laser & Surgery Ctr. of Acadiana LLC v. Ohio Cas. Ins. Co.*, No. 21-01236, 2021 WL 2702123 (W.D. La. June 14, 2021), *report and recommendation adopted,* No. 21-01236, 2021 WL 2697990 (W.D. La. June 30, 2021); *Pierre v. Transp. Ins. Co.*, No. 20-01660, 2021 WL 1709380 (W.D. La. Apr. 29, 2021); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F.Supp.3d 896 (W.D. Tex.2021); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).

Further, multiple courts within the Fifth Circuit have addressed this issue, rejected similar arguments as Plaintiff puts forth here, and determined that the presence of the virus in a building did not cause or equate to physical damage or loss sufficient to trigger coverage.[86]

Plaintiff pleads that COVID-19 "attached to surfaces on a molecular level, interacting with the property's surfaces."[87] However, the mere attachment of COVID-19 does not rise to the level of emission of corrosive gas, nor does Plaintiff plead any actual physical changes caused by COVID-19[88] Further, unlike in *Widder v. Louisiana Citizens Property Insurance Corp.*, where the presence of inorganic lead required removal and remediation, Plaintiff does not allege that the presence of COVID-19 here requires remediation beyond cleaning.[89]

The Court finds that even if the covered properties were rendered uninhabitable, there was no "distinct, demonstrable, physical alteration" to the property caused by COVID-19 or the stay home orders.

Plaintiff advances other arguments in support of finding "direct physical loss" without any structural alterations. Plaintiff cites *Landmark American Insurance*

---

[86] *Diesel Barbershop*, 479 F.Supp.3d at 360 (in which the court found that COVID-19 does not produce a direct physical loss to property like "a noxious odor that makes a business uninhabitable"; therefore, the plaintiffs failed to plead "a direct physical loss" to property to trigger coverage); *see also Pierre*, No. 20-01660, 2021 WL 1709380, at *3 (W.D. La. Apr. 29, 2021), citing cases.

[87] R. Doc. 1-1 at ¶ 42.

[88] *See Hartford*, 181 F. App'x at 470 (requiring distinct, demonstrable, physical alteration of the property" to trigger coverage).

[89] No. 2011-0196 (La.App. 4 Cir. 8/10/11); 82 So.3d 294, *writ denied,* 2011-2336 (La. 12/2/11); 76 So.3d 1179; *see Terry Black's Barbecue,* 514 F. Supp. 3d 896, 907 (W.D. Tex. 2021) (in holding COVID-19 did not cause "direct physical loss" the court stated "[t]he virus . . . can be removed from surfaces with routine cleaning and disinfectant"); *see also Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191 (D. Kan. 2020) (holding that presence of COVID-19 does not constitute "direct physical loss or damage" because it can be eliminated); *Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*, 530 F. Supp. 3d 74 (D. Mass. 2021) (holding the same).

*Company v. Gulf Coast Analytical Labs., Inc.* as further support that physical alterations are not necessary for "physical loss" to occur.[90] Plaintiff also relies on *Studio 417 v. Cincinnati Insurance Company* and *Blue Springs Dental Care, LLC v. Owners Insurance Company*, as well as decisions from courts in other jurisdictions, for the proposition that "physical loss" encompasses stay home orders and the presence of COVID-19.[91] Further, Plaintiff asserts that other courts have construed the phrase "physical loss or damage to" as allowing for loss without tangible alteration to a property.[92] The Court finds Plaintiff's reliance misplaced, as those cases are factually distinguishable. The Court instead relies instead on similar cases within the Fifth Circuit.

Finally, in constructing "direct physical loss" the Court must take care not to render other provisions of the contract superfluous or absurd.[93] Plaintiff's suggestion that "direct physical loss" to a property should essentially encompass loss of use of the property potentially renders part of the policy superfluous. The Court returns to the Fifth Circuit's recent decision in *Terry Black's Barbecue*, wherein the court addressed the distinction between the loss of "use of" property and the loss of "property," cautioning the plaintiffs in that case not to read into the insurance policy words that are not there.[94] "A 'physical loss of property' cannot mean something as

---

[90] R. Doc. 25 at 9; *Landmark Am. Ins. Co. v. Gulf Coast Analytical Labs., Inc.*, No. 10-809, 2012 WL 1094761 (M.D. La. Mar. 30, 2012).

[91] *See Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867 (W.D. Mo. 2020); *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360 (E.D. Va. 2020).

[92] *Studio 417*, 478 F. Supp. 3d 794; *Blue Springs* 488 F. Supp. 3d 867.

[93] La. Civ. Code Ann. art. 2046.

[94] No. 21-50078, 2022 WL 43170 at *4 (5th Cir. 2022).

broad as the 'loss of use of property for its intended purpose.' None of these words fall within the plain meaning of physical, loss, or property. . . 'Physical loss of property' is not synonymous with 'loss of use of property.'"[95] This Court agrees with that succinct analysis and has not found that any policy provision would be rendered superfluous.

### D. Allowing Amendment of the Complaint under Fed. R. Civ. P. 15.

The Court notes that Plaintiff has not requested leave to amend its Complaint, either by formal motion or in its Response. Nonetheless, while the Court will "freely give leave [to amend] when justice so requires,"[96] leave to amend "is by no means automatic."[97] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[98] "I[t] is within the district court's discretion to deny a motion to amend if it is futile."[99] "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[100]

Applying those factors here, the Court finds that any amendment would be futile as Plaintiff has failed to state a plausible claim that the presence of the COVID-

---

[95] *Id.*
[96] Fed. R. Civ. P. 15(a).
[97] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[98] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[99] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[100] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

19 Pandemic in the Covered Properties and other properties near the Covered Locations constitutes a direct physical loss. The Court further recognizes that Plaintiff is represented by well-seasoned and skillful attorneys who have vigorously advocated for their client in crafting a detailed 13-page Petition. Nevertheless, because the Court should grant leave to amend when justice so requires, the Court grants Plaintiff leave to file an Amended Complaint addressing the deficiencies identified in this Order, should it choose to do so.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that State Farm's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim[101] is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff Southern Orthopaedic is granted leave to amend the Complaint to address the deficiencies in this Order by **Friday, February 4, 2022.**

New Orleans, Louisiana, January 25, 2022.

WENDY B. VITTER
**United States District Judge**

---

[101] R. Doc. 15.