UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN ORTHOPAEDIC SPECIALISTS LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-0861-WBV-DMD** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **SECTION: D (3)** |

## ORDER AND REASONS

Before the Court is Defendant State Farm Fire and Casualty Company's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.[1] Plaintiff Southern Orthopaedic Specialists, LLC opposes the Motion.[2] Defendant has filed a Reply.[3] Plaintiff has filed a Supplemental Opposition.[4] Defendant has filed a response to Plaintiff's Supplemental Opposition.[5] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

### I.  FACTUAL AND PROCEDURAL BACKGROUND[6]

On January 25, 2022, this Court issued an Order denying without prejudice Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.[7] Plaintiff was granted leave to amend its Complaint to address the deficiencies identified in the Court's Order and timely filed an Amended Complaint on February 4, 2022.[8]

---

[1] R. Doc. 63.
[2] R. Doc. 65.
[3] R. Doc. 75.
[4] R. Doc. 80.
[5] R. Doc. 83.
[6] Because the factual background of this matter was extensively detailed in prior orders of this Court, (*see* R. Doc. 56), the factual and procedural background will be limited to matters pertinent to this motion.
[7] R. Doc. 56.
[8] R. Doc. 60.

In its Amended Complaint, Plaintiff makes new allegations to support its assertion that the presence of COVID-19 in the covered properties caused direct physical loss.[9] Specifically, Plaintiff cites several additional studies, including studies published in TIME magazine, the National Institute of Health, and by the Centers for Disease Control ("CDC"), as well as one conducted by its own expert, describing how COVID-19 is transmitted and concluding that COVID-19 can remain active on surfaces for up to several weeks.[10] Plaintiff claims that the interaction of COVID-19 with the covered property's surfaces caused damage to its property, which in turn resulted in damage to the property's structure, thus constituting direct physical loss.[11] Plaintiff also alleges that the interaction of COVID-19 with a surface causes damage to the property requiring frequent cleaning.[12] Plaintiff further alleges that it suffered direct physical loss due to government shutdown orders, which are not barred by any Policy.[13] Finally, Plaintiff asserts that its direct physical loss was due to the "loss and functionality of its insured physical property for its intended purposed as a direct result of governmental actions and civil orders restricting the use of its offices."[14] Then, in addition, Plaintiff raises new fraud and negligent

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] R. Doc. 60. This claim is briefly asserted by Plaintiff and no additional or supporting facts are alleged. The Court notes that it has previously determined that claims for coverage arising from government stay home orders are directly linked to COVID-19 and thus barred under the provisions of Covered Cause of Loss, which includes the Virus Exclusion Clause. *See* R. Doc. 56 (citing *Boulet Rehabilitation Services Inc. v. State Farm Fire & Casualty Company*, No. 6:21-00642, 2021 WL 4923649 at *4 (W.D. La. Oct. 20, 2021), *report and recommendation adopted,* No. 6:21-00642, 2021 WL 5234772 (W.D. La. Nov. 9, 2021).
[14] R. Doc. 60, ¶ 54.

misrepresentation claims in its Amended Complaint, alleging that the company that represented State Farm and other member property insurance companies submitted filings to the Louisiana Department of Insurance in 2007 in an attempt to covertly alter the policy exclusion to inappropriately narrow coverage.[15] Regarding its newly raised claim of negligent misrepresentation, Plaintiff contends that State Farm "supplied its policyholders with false information regarding coverage under their policies" and that State Farm failed to inform its policyholders that the contamination exclusion was expanded to cover pandemics and communicable diseases.[16]

Thereafter, Defendant filed its second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[17] Plaintiff filed an opposition and Defendant, with leave of Court, file an Amended Reply.[18] Also with leave of Court, Plaintiff and Defendant then filed Supplemental Memoranda.[19]

In its Motion to Dismiss, Defendant contends that Plaintiff fails to state a claim, as a matter of law, for the reasons already identified by this Court.[20] Defendant argues that Plaintiff's claims are barred by the clear language of the Policy and its Endorsement which require, among other things, "accidental direct physical loss" to Covered Property.[21] Defendant draws the Court's attention to decisions from numerous courts, including the Fifth Circuit Court of Appeals, which have held that the policy term "direct physical loss" requires a physical alteration of the insured

---

[15] *Id.*
[16] R. Doc. 60, ¶¶ 92 and 94.
[17] R. Doc. 63.
[18] R. Docs. 68 and 75, respectively.
[19] R. Docs. 80 and 83, respectively.
[20] R. Doc. 63-1.
[21] *Id.*

property and concludes "Indeed, the overwhelming weight of the caselaw holds that the presence of the virus at a plaintiff's property is legally insufficient to state a claim for accidental direct physical loss to covered property."[22] Defendant further argues that the Policy's unambiguous Virus Exclusion bars coverage.[23] Defendant also contends that Plaintiff's newly raised fraud and negligent misrepresentation claims must be dismissed.[24] Defendant asserts that Plaintiff is unable to prove that it relied upon a misrepresentation in the Policy when seeking coverage for COVID-19 related losses because the plain language of the Policy's Virus Exclusion does not misrepresent that it applies to a pandemic.[25]

In its Opposition, Plaintiff argues that it has provided sufficient evidence that it sustained a direct physical loss due to the presence of COVID-19 at its covered properties and that the Policy does not exclude coverage for Southern Orthopaedic's claims.[26] Plaintiff further contends that it has raised plausible fraud and negligent misrepresentation claims in its Amended Complaint alleging that the company that represented State Farm and other member property insurance companies submitted filings to the Louisiana Department of Insurance in 2007 in an attempt to covertly alter the policy exclusion to inappropriately narrow coverage.[27]

In Reply, Defendant notes that Plaintiff, instead of curing the deficiencies pointed out by the Court, simply re-urges the arguments advanced in its original

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] R. Doc. 68.
[27] *Id.*

Petition and Opposition to Defendant's first motion to dismiss.[28] Defendant reiterates that coverage for any losses is barred by the Virus Exclusion and that this Court has already determined that the language of that exclusion is unambiguous.[29] Defendant also counters Plaintiff's argument that the Virus Exclusion did not encompass a global communicable disease of the magnitude of the COVID-19 pandemic by pointing out that this Court previously rejected that argument, noting that the worldwide pandemic disease was because of the COVID-19 virus.[30] Finally, Defendant asserts that Plaintiff fails to state a claim for "accidental direct physical loss to" the covered property.[31]

Plaintiff also filed a Supplemental Opposition in which it urges the Court to wait for the Louisiana Fourth Circuit's decision in *Cajun Conti, LLC, et al v. Certain Underwriters at Lloyd's London, et al.* regarding the definition of "direct physical loss" before ruling on Defendant's pending Motion to Dismiss.[32] Defendant filed a response to Plaintiff's Supplemental Opposition in which it contrasts the facts of the present case from *Cajun Conti,* noting that, "even if Cajun Conti's ruling on direct physical loss were to be modified or reversed on appeal, it would not be outcome determinative here."[33]

---

[28] R. Doc. 75.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] R. Doc. 80.
[33] R. Doc. 83. While state law decisions can serve as persuasive authority for district courts, there is ample Fifth Circuit and Eastern District of Louisiana precedent available regarding the meaning of "direct physical loss" and analyzing similar insurance policies in the wake of the COVID-19 pandemic. The Court detailed this precedent in its previous Order (R. Doc. 56). Further, the facts of *Cajun Conti* are different from the present dispute. Notably the insurance policy in dispute in *Cajun Conti* does not

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[34] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[37]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[38] The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[39] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[40] In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside

---

contain a virus exclusion clause, as is present in this matter. Accordingly, the Court declines to hold off issuing its order until a ruling in *Cajun Conti*.
[34] Fed. R. Civ. P. 12(b)(6).
[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[36] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).
[37] *Iqbal*, 556 U.S. at 679 (quotation omitted).
[38] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[39] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[40] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[41] The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[42]

While the Court is generally prohibited from considering matters outside the pleadings in a 12(b)(6) analysis, the Court considers the insurance policy at issue, including endorsements and attachments, as they were attached to Southern Orthopaedic's Amended Petition, are referenced in the Amended Petition, and are central to Plaintiff's claims.[43]

## III. JURISDICTION

The Court has original jurisdiction of this matter pursuant to 28 U.S.C.§ 1332 as Plaintiff and Defendant are diverse from each other and the amount in controversy exceeds $75,000.[44]

## IV. ANALYSIS

### A. Direct Physical Loss

In its Amended Complaint, Plaintiff cites news articles and medical studies to support its claim that the presence of COVID-19 in the covered properties caused

---

[41] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[42] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004).
[43] R. Doc. 60-1.
[44] The Court notes that Plaintiff failed to name the members of Southern Orthopaedic Specialists, LLC, in its Amended Complaint, stating only that "the members are individuals who are citizens of Louisiana." R. Doc. 60. The Court further notes that the members of Southern Orthopaedic Specialists, LLC were named in the original Notice of Removal, which further confirmed that the named members were Louisiana citizens, that defendant State Farm is a citizen of Illinois, and that the amount in controversy exceeds $75,000. *See* R. Doc. 1. The Court is satisfied that it has jurisdiction of this matter.

direct physical loss.[45] Plaintiff cites several studies, including studies published in TIME magazine, the National Institute of Health, and by the CDC, as well as one conducted by its own expert, describing how COVID-19 is transmitted and concluding that COVID-19 can remain active on surfaces for up to several weeks.[46] Plaintiff claims that the interaction of COVID-19 with the covered property's surfaces caused damage to its property, which in turn resulted in damage to the property's structure, thus constituting direct physical loss.[47] Notably, Plaintiff does not cite to a specific study that supports this conclusion—namely, that COVID-19 causes damage to the property's structure and constitutes direct physical loss— in its Amended Complaint. Plaintiff further alleges that it suffered direct physical loss due to government shutdown orders, which are not barred by any Policy.[48] Plaintiff does not allege any other facts to support its claim of direct physical loss.

In its previous Order, this Court determined that the Plaintiff's original complaint failed to properly allege that the actual presence of COVID-19 caused "direct physical loss" to a property, specifically because Plaintiff failed to assert a connection to any tangible alteration or change to the property.[49] Here, Plaintiff is again unable to point to any specific property damage caused by the presence of

---

[45] R. Doc. 60, specifically ¶¶ 43, 45-49.
[46] *Id.*
[47] *Id.*
[48] R. Doc. 60. This claim is briefly asserted by Plaintiff and no additional or supporting facts are alleged. The Court notes that it has previously determined that claims for coverage arising from government stay home orders are directly linked to COVID-19 and thus barred under the provisions of Covered Cause of Loss, which includes the Virus Exclusion Clause. *See* R. Doc. 56 (citing *Boulet Rehabilitation Services Inc. v. State Farm Fire & Casualty Company,* No. 6:21-00642, 2021 WL 4923649 at *4 (W.D. La. Oct. 20, 2021), *report and recommendation adopted,* No. 6:21-00642, 2021 WL 5234772 (W.D. La. Nov. 9, 2021).
[49] R. Doc. 56.

COVID-19. Plaintiff asserts that its direct physical loss was due to the "loss and functionality of its insured physical property for its intended purposed as a direct result of governmental actions and civil orders restricting the use of its offices."[50] While "direct physical loss" is not defined by the Policy or endorsement, the Fifth Circuit has held that a "direct physical loss of property" means a tangible alteration to the property or physical deprivation of property.[51] The Fifth Circuit has held that the presence of COVID-19 in a building and on surfaces does not "constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant."[52] This holding has been applied by numerous courts within the Fifth Circuit evaluating similar claims. Notably, these cases universally found that COVID-19 or stay home orders did not constitute "direct physical loss."[53] Courts have

---

[50] R. Doc. 60, ¶ 54.
[51] *Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Co.*, 514 F. Supp. 3d. 896 (W.D. Tex. 2021)**,** aff'd. *Terry Black's Barbecue LLC*, No. 21-50078, 2022 WL 43170 (5th Cir. 2022); *see also Aggie Investments LLC,* No. 21-40382, 2022 WL 67333 (E.D. Tex. Apr. 20, 2021) (finding that "direct physical loss" under the policy required a tangible alteration to property, which preventative government orders did not do).
[52] *Id.*; *see also Diesel Barbershop*, 479 F.Supp.3d at 360 (in which the court found that COVID-19 does not produce a direct physical loss to property like "a noxious odor that makes a business uninhabitable"; therefore, the plaintiffs failed to plead "a direct physical loss" to property to trigger coverage); *see also Pierre*, No. 20-01660, 2021 WL 1709380, at *3 (W.D. La. Apr. 29, 2021), citing cases.
[53] *Muriel's,* No. 20-2295, 2021 WL 1614812 (E.D. La. Apr. 26, 2021); *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F.Supp.3d 574 (E.D. La. 2021) (finding that lost profits incurred by men's clothing store owners by government-mandated business closures during COVID-19 pandemic did not amount to "direct physical loss or damages" because there was no physical alteration of the property); *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, No. 21-648, 2021 WL 2476867 (E.D. La. June 17, 2021) (following *Q Clothier* in requiring distinct, demonstrable, physical alterations); *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, No. 21-858, 2021 WL 5415846 (E.D. La. Nov. 19, 2021) (holding that "direct physical loss or damage" requires a "distinct, demonstrable, physical alteration of the property" or "actual physical change or injury to the property" which Plaintiff failed to allege because "COVID damages people, not property"); *Coleman E. Adler & Sons, LLC v. Axis Surplus Insurance Co.*, No. 21-00648, 2021 WL 2476867 (E.D. La. June 17, 2021) (finding that "closures

also considered the question of loss of "functionality" due to COVID-19 and related government orders. The Fifth Circuit, as well as other circuit courts, has held that the "loss of use" or "functionality" of property due to COVID-19 and related government orders does not constitute direct physical loss.[54] Accordingly, Plaintiff has failed to assert a plausible claim in its Amended Complaint that the presence of COVID-19 in its covered buildings caused direct physical loss is insufficient under the Rule 12(b)(6).

### B. The Policy's Coverage

Plaintiff also alleges that no provision in the Policy bars coverage for claims of direct physical loss due to the presence of COVID-19.[55] Plaintiff claims that Section I–Exclusions of the Policy, specifically subsection "j. Fungus, Virus or Bacteria," was only intended to prohibit coverage for remediation, removal, replacement,

---

mandated by civil authorities due to the COVID-19 pandemic did not cause direct physical loss or damage because their injury is purely economic in nature"); *Padgett v. Transp. Ins. Co.*, No. 21-01086, 2021 WL 2559597 (W.D. La. June 1, 2021), *report and recommendation adopted,* 6:21-CV-01086, 2021 WL 2555377 (W.D. La. June 22, 2021); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*, No. 21-00317, 2021 WL 1740466 (W.D. La. May 3, 2021); *Laser & Surgery Ctr. of Acadiana LLC v. Ohio Cas. Ins. Co.*, No. 21-01236, 2021 WL 2702123 (W.D. La. June 14, 2021), *report and recommendation adopted,* No. 21-01236, 2021 WL 2697990 (W.D. La. June 30, 2021); *Pierre v. Transp. Ins. Co.*, No. 20-01660, 2021 WL 1709380 (W.D. La. Apr. 29, 2021); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F.Supp.3d 896 (W.D. Tex.2021); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).
[54] *Terry Black's Barbecue, LLC* 514 F. Supp. 3d. 896**,** aff'd. *Terry Black's Barbecue LLC*, 2022 WL 43170 (holding loss of use of Plaintiff's dining rooms for their intended purpose does not amount to a physical loss of property); *Muriel's,* No. 20-2295, 2021 WL 4290724 (E.D. La. Sep. 21, 2021) (dismissing plaintiff's claims for lost "functionality and use of its physical property" as a result of government closure orders); *see also 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 222–23 (2d Cir. Dec. 27, 2021) (concluding "direct physical loss" does not extend to loss of use but requires physical damage); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (finding no direct physical loss when Plaintiff's dental business was forced to close because the COVID-19 pandemic shelter-in-place order did not damage or change the property in a way that required its repair or precluded its future use for dental procedures).
[55] R. Doc. 60.

detoxification or testing and not to bar claims for contamination from a virus, like COVID-19.[56]

Plaintiff also claims that the Policy fails to include any exclusions for "Pandemic Event[s] or Communicable Disease."[57] Plaintiff alleges that due to Defendant's failure to use the Pandemic Event or Communicable Disease language, Plaintiff had a reasonable expectation that such events were covered.[58]

The Court has previously determined that the Virus Exclusion Clause precludes coverage for damages caused by "Fungi, Virus or Bacteria." The "Section I—Exclusions" provision of the Policy contains a lead-in clause that excludes coverage if the loss is "the cause of the excluded event" or if "other causes acted concurrently or in any sequence with the excluded event to produce the loss."[59] Present in the listed excluded events is "j. Fungi, Virus Or Bacteria."[60] The Virus Exclusion Clause is further defined as "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease."[61] As noted in its previous Order, Courts throughout the Fifth Circuit have found that both identical and similar virus exclusion clauses bar recovery for COVID-19 related insurance claims. In *Muriel's New Orleans, LLC v. State Farm Fire and Casualty Company*, this court evaluated an identical State Farm insurance contract and Virus Exclusion Clause.[62] There, the court determined that the plain language of the Virus Exclusion Clause

---

[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] R. Doc. 15-3 at 59.
[60] *Id.*
[61] *Id.* at 60.
[62] No. 20-2295, 2021 WL 1614812 (E.D. La. Apr. 26, 2021).

precluded Muriel's claim for coverage when, as here, the loss "occurs as a result" of a "virus, bacteria, or other microorganism[.]"[63] The court explained that the "Centers for Disease Control and Prevention ("CDC") defines COVID-19 as "a new virus ... 'CO' stands for corona, 'VI' for virus, and 'D' for disease. Therefore, COVID-19 falls squarely within the language of the Virus Exclusion."[64] Numerous other courts have reached similar conclusions.[65]

Further, this Court has previously determined that a plain reading of the Virus Exclusion Clause reveals that it bars coverage for "any loss which would not have occurred in the absence of . . . virus."[66] Plaintiff's argument that the exclusions did not specifically cover a "Pandemic Event or Communicable Disease" ignores the fact that the worldwide pandemic disease is because of the COVID-19 virus. As such, a plain reading of the Virus Exclusion Clause connects the COVID-19 virus to the word "virus" in the clause. Thus, after its own analysis of the plain language of the clause, and in keeping with these decisions regarding identical or similar Virus Exclusion Clauses in State Farm insurance contracts, the Court adopts its previous finding that

---

[63] *Id.* at *569-70.
[64] *Id.* at *570.
[65] *Boulet Rehabilitation Services Inc. v. State Farm Fire & Casualty Company*, No. 6:21-00642, 2021 WL 4923649 (W.D. La. Oct. 20, 2021), *report and recommendation adopted,* No. 6:21-00642, 2021 WL 5234772 (W.D. La. Nov. 9, 2021) (finding that the Virus Exclusion Clause in a State Farm insurance contract barred plaintiff's COVID-19 coverage claims); *see also Travel Mach. La. LLC v. State Farm Fire & Cas. Co.,* No. 6:21-0635, 2021 WL 4844401 (W.D. La. Oct. 14, 2021), *report and recommendation adopted sub nom. Travel Mach. Louisiana, LLC v. State Farm Fire & Cas. Co.,* CV 21-0635, 2021 WL 5040355 (W.D. La. Oct. 29, 2021) (analyzing an identical State Farm Virus Exclusion Clause and holding that the plain language of the Virus Exclusion Clause precluded plaintiff's claim for coverage regarding COVID-19 related losses because "the Virus Exclusion unambiguously excludes loss caused by virus."); *see also Q Clothier New Orleans LLC v. Twin City Fire Insurance Company*, No. 20-1470, 2021 WL 1600247 (E.D. La. Apr. 23, 2021) (holding that the policy's virus exclusion barred the plaintiff's claims, as a matter of law, because the COVID-19 virus was in the chain of causation since the government orders, as here, were issued to reduce the spread of the virus).
[66] R. Doc. 15.

the Virus Exclusion Clause applies in the present case to bar Plaintiff's claim for coverage.[67]

### C. New Claims in Plaintiff's Amended Complaint

The Court previously granted Plaintiff leave "to file an Amended Complaint addressing the deficiencies identified in this Order."[68] Contrary to this Court's previous Order limiting an amendment to deficiencies identified in the previous order, Plaintiff also added two new claims in its Amended Complaint, specifically a claim for fraud and a claim alleging negligent misrepresentation. Plaintiff did not request leave to file new claims against Defendant, nor did the Court grant leave to do so in its prior Order. While the Court is puzzled by Plaintiff's inclusion of new grounds in its Amended Complaint without leave of Court, the Court nevertheless analyzes the new grounds under a 12(b)(6) analysis.

Plaintiff claims that State Farm, through its membership in the Property Insurance Association of Louisiana ("PIAL"), "covertly alter[ed] contamination exclusions contained in its members' property insurance policies to cover pandemics and communicable diseases" and "misrepresented or suppressed the truth by failing to inform its policyholders that the contamination exclusion was discretely extended to pandemics [and] any communicable diseases."[69] Plaintiff alleges that it "justifiably relied" on State Farm's alleged failure to inform it "of the expanded scope of the contamination exclusion."[70] To state a claim for fraud, Plaintiff must allege facts

---

[67] *See* R. Doc. 56.
[68] R. Doc. 56.
[69] R. Doc. 60.
[70] *Id.*

showing: (i) Defendant made a misrepresentation of material fact; (ii) Defendant made the misrepresentation with intent to deceive; and (iii) Plaintiff justifiably relied on the misrepresentation and was consequently injured.[71] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[72] This "requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"[73] Here, Plaintiff is attempting to attribute a misrepresentation purportedly made by the PIAL, and not made by Defendant, to Defendant. Plaintiff fails to allege with any specificity any misrepresentation of insurance coverage or the requisite intent necessary to bring a fraud claim. Additionally, Plaintiff fails to connect Defendant to any misrepresentation, instead, only conclusory connecting Defendant to purported statements made an entity of which it was required to be a member. As stated above, to prove a claim for fraud, Plaintiff must allege facts showing that "Defendant made a misrepresentation of material fact . . ."[74] Further, this Court has previously determined that the plain meaning of the Policy's Virus Exclusion clause excludes coverage for Plaintiff's COVID-19 claims. Thus, the plain language of the Virus Exclusion does not misrepresent or suppress the fact that the Virus Exclusion applies to a pandemic. Accordingly, Plaintiff fails to assert a plausible claim of fraud under Rule 12(b)(6).

---

[71] *See* La. Civ. Code art. 1953; *see also D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713, 725-26 (E.D. La. May 29, 2020).
[72] Fed. R. Civ. P. 9(b).
[73] *D.H. Griffin*, 463 F. Supp. 3d at 726.
[74] *See* La. Civ. Code art. 1953; *see also D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713, 725-26 (E.D. La. May 29, 2020).

The Court notes that Plaintiff's claim for negligent misrepresentation also fails under a Rule 12(b)(6) analysis. Plaintiff alleges that "[b]y failing to inform its policyholders that the contamination exclusion was expanded to cover pandemics and communicable diseases, State Farm breached its legal duty."[75] To state a claim for negligent misrepresentation, Plaintiff must allege facts showing: "(1) the defendant, in the course of its business, supplied false information to the plaintiff, (2) the defendant had a legal duty to provide correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of its justifiable reliance upon the omission or affirmative misrepresentation."[76] Initially, the Court notes that Plaintiff has not supplied any facts to support that Defendant supplied false information to the Plaintiff to support a negligent misrepresentation claim. Specifically, Plaintiff has not provided facts to support its claim that State Farm, as a member of PIAL, expanded its "contamination exclusion" language in the Policy regarding insurance coverage in the event of a pandemic.[77] Further, this claim is directly contrary to this Court's previous holding regarding the plain meaning of the Policy's Virus Exclusion clause. In its previous Order, this Court held that the plain language of the Virus Exclusion excludes coverage for Plaintiff's COVID-19 claims and determined that the "Plaintiff's argument that the exclusions did not specifically cover a worldwide pandemic disease

---

[75] R. Doc. 60.
[76] *VPS US, LLC v. Vaczilla Trucking, LLC*, NO. 15-02226, 2016 WL 3655908, at *2 (E.D. La. July 8, 2016).
[77] R. Doc. 60.

ignores the fact that the worldwide pandemic disease is because of the COVID19 virus."[78] Thus, the plain language of the Virus Exclusion does not misrepresent or suppress the fact that the Virus Exclusion applies to a pandemic. Accordingly, and for the reasons detailed in the Court's previous Order,[79] Plaintiff has failed to state a plausible claim of negligent misrepresentation.

## V.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant State Farm Fire and Casualty Company's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim[80] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Southern Orthopaedic's Amended Complaint[81] is **DISMISSED with prejudice**.[82]

New Orleans, Louisiana, May 4, 2022.

WENDY B. VITTER
**UNITED STATES DISTRICT JUDGE**

---

[78] R. Doc. 56.
[79] *Id.*
[80] R. Doc. 63.
[81] R. Doc. 60.
[82] The Court notes that in its previous Order, in determining whether to allow an amendment of the Complaint, the Court considered such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment" and concluded that any amendment would likely be futile as Plaintiff has failed to state a plausible claim that the presence of the COVID-19 Pandemic in the Covered Properties and other properties near the Covered Locations constitutes a direct physical loss. The Court nevertheless granted Plaintiff leave to amend. The Court adopts its prior reasoning and concludes that any further amendment of the complaint would be futile, especially in light of Plaintiff's failure to cure the deficiencies in the Amended Complaint.